## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 17 2019, 10:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James Harper
Harper & Harper, LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Daniel Shoffner,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

December 17, 2019

Court of Appeals Case No.
19A-CR-360

Appeal from the LaPorte Circuit Court

The Honorable Thomas Alevizos, Judge

Trial Court Cause No.
46C01-1406-MR-219

**May, Judge.**

[1] Daniel Shoffner appeals his sentence for Class A felony voluntary manslaughter.[1] He asserts his sentence is inappropriate in light of the nature of his offense and his character. We affirm.

## Facts and Procedural History

[2] On or about June 13, 2014, Daniel Shoffner and his girlfriend Birdie Elder were drinking at their house in LaPorte, Indiana. They were upstairs and got into an argument about Elder's family. Shoffner used a pocketknife to stab Elder in the neck, in the chest, and on the hand that Elder used to try to block his thrusts. Elder collapsed, and Shoffner held her for ten to twenty minutes until she stopped breathing. He then dragged her body down the stairs and placed her body in a chest freezer on the back porch.

[3] Shoffner attempted to commit suicide by taking Elder's Xanax pills, shooting insulin into his stomach, and cutting his wrists. He later went to the hospital and received stitches for the cuts on his wrists. On June 15, 2014, Shoffner called his daughter and told her he had killed Elder. Shoffner's daughter called 911. Officers responded to Shoffner's house, found Elder's body in the freezer, and arrested Shoffner.

---

[1] Ind. Code § 35-42-1-3 (1997).

[4] The State charged Shoffner with murder.[2] Shoffner filed a notice of insanity defense and a motion for psychiatric examination. Doctors evaluated Shoffner to determine his competency to stand trial and his ability to appreciate the wrongfulness of his actions at the time of the offense. On November 16, 2018, the parties entered an agreement whereby Shoffner would plead guilty but mentally ill to voluntary manslaughter and, in exchange, his sentence would not exceed forty years, with a maximum of thirty-five years executed.

[5] At sentencing, the trial court found Shoffner's extensive criminal history to be an aggravating circumstance. The court also found as additional aggravating circumstances that Shoffner was in a position of trust to the victim, the victim was of advanced age, and Shoffner was out on bond when he killed Elder. The court found Shoffner's guilty plea to be a mitigating factor. The trial court also found Shoffner's history of mental illness to be a mitigating factor, but only "slightly mitigating because he's already been given somewhat [of] a break . . . because of the nature of his plea." (Tr. Vol. II at 89.) The court sentenced Shoffner to forty years in the Indiana Department of Correction, with thirty-five years executed and five years suspended to probation.

# Discussion and Decision

---

[2] Ind. Code § 35-42-1-1 (2007).

[6] After due consideration of the trial court's decision, we may revise a sentence authorized by statute if the sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. App. R. 7(B). Our role in reviewing a sentence pursuant to Appellate Rule 7(B) "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "The defendant bears the burden of persuading this court that his or her sentence is inappropriate." *Kunberger v. State*, 46 N.E.3d 966, 972 (Ind. Ct. App. 2015). "Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014).

[7] A Class A felony is punishable by a fixed term between twenty and fifty years, with an advisory sentence of thirty years. Ind. Code § 35-50-2-4. Shoffner's plea agreement provided he would plead guilty but mentally ill to Class A felony voluntary manslaughter, and in exchange his sentence would not exceed forty years, with the executed portion of the sentence not to exceed thirty-five years. The trial court imposed a sentence that was within the range allowed by statute and above the advisory sentence. It was the maximum sentence that could be imposed consistent with his plea agreement. Shoffner asks us to revise his sentence downward to the advisory sentence of thirty years.

[8]     The nature of Shoffner's offense was serious and heinous. Elder allowed Shoffner to stay in her house because he did not have another place to live. Shoffner was a six-foot-one, 250-pound, middle-age male, and Elder was an elderly woman. Shoffner stabbed her multiple times, while she tried to stop him. He did not notify authorities or seek medical help for Shoffner after he stabbed her. Instead, he held her for ten to twenty minutes until she died. Even after she died, he did not notify authorities. Rather, he placed her body in a chest freezer and left her body there for days. The coroner had to wait two days for Elder's body to thaw before performing the autopsy. The nature of Shoffner's offense merits a sentence above the advisory. *See Reis v. State*, 88 N.E.3d 1099, 1104 (Ind. Ct. App. 2017) (holding egregious nature of defendant's offense supported near-maximum sentence)

[9]     Shoffner argues he deserves a lesser sentence because of his long-standing history of schizophrenia. Our Indiana Supreme Court has directed trial courts to "carefully consider on the record what mitigating weight, if any, to accord to any evidence of mental illness, even though there is no obligation to give the evidence the same weight the defendant does." *Weeks v. State*, 697 N.E.2d 28, 30 (Ind. 1998). The court should look to the defendant's ability to control his behavior, limitations on defendant's functioning, the duration of the illness, and the nexus between the illness and commission of the crime. *Id*. Shoffner's medical records indicate he was diagnosed with schizophrenia at age eighteen. He sought treatment for the condition at various times throughout his life. In fact, in May 2014, shortly before Elder's death, Shoffner contacted a medical

services provider and requested medication, but the provider denied his request because he had been absent from treatment for eight months.

[10] It is unclear to what extent Shoffner's illness minimizes his culpability. He was voluntarily intoxicated at the time of the offense, and he had discontinued treatment months before committing the offense. In speaking with detectives, Shoffner described the offense in a lucid manner. However, during one mental health evaluation, Shoffner told the psychologist he did not remember the killing because he was too intoxicated at the time of the offense. In two other mental health examinations, he told the evaluators that he experienced auditory and visual hallucinations at the time of the offense and believed Elder was possessed by demons when he killed her.

[11] Further, the trial court found Shoffner's mental illness to be a mitigating factor, but the court described it as a "slight mitigator" because Shoffner's plea agreement provided some leniency. (Appellant App. Vol. III at 76.) Shoffner was originally charged with murder, but he pled guilty to the lesser charge of voluntary manslaughter, and his plea agreement limited the executed portion of his sentence to thirty-five years. Thus, Shoffner's mental illness does not render his sentence inappropriate. *See Salyers v. State*, 862 N.E.2d 650, 654 (Ind. 2007) (holding sentence of life without parole was appropriate for defendant that suffered from mental illness and pled guilty but mentally ill to killing a police officer).

Additionally, Shoffner's significant criminal history reflects poorly on his character. He has two previous felony convictions and thirteen pervious misdemeanor convictions. These convictions include battery, theft, and criminal recklessness. He also has a history of not complying with conditions of probation or community corrections. At the time he committed the instant offense, he was out on bond for charges of theft and operating a vehicle while intoxicated. Therefore, we hold Shoffner's sentence is not inappropriate given the nature of his offense and his character. *See Norris v. State*, 113 N.E.3d 1245, 1256-57 (Ind. Ct. App. 2018) (holding sentence was not inappropriate, particularly considering defendant's extensive criminal history), *reh'g denied*, *trans. denied*.

# Conclusion

Shoffner murdered an elderly woman after she allowed him to stay with her. He stabbed her multiple times, dragged her body down a set of stairs, and stuffed her body into a freezer. The trial court considered Shoffner's history of mental illness but gave it little weight because of the nature of Shoffner's plea agreement. His criminal history was extensive, including multiple previous convictions involving violence. We cannot say his sentence is inappropriate given the nature of his offense and his character, and accordingly we affirm.

Affirmed.

Crone, J., and Pyle, J., concur.